UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARY VIRGINIA MASTERS, aka )
VIRGINIA E. JOHNSON, )
 )
       Plaintiff, )
 )
  vs. )   Case No. 4:06CV1850-DJS
 )
UHS OF DELAWARE, INC., )
 )
       Defendant. )

### ORDER

Now before the Court are defendant's motion to exclude improper damages testimony [Doc. #107], and plaintiff's Daubert motion to exclude or limit the testimony of defendant's damages expert, James D. Woods [Doc. #95]. The matters have been fully briefed and are ready for disposition.

### I. Background

Plaintiff, in her amended complaint, alleges that she and the late Dr. William H. Masters pioneered research in the field of human sexual response and the diagnosis and treatment of human sexual disorders. Because of Dr. Masters and Ms. Johnson's contribution to the field of sexual medicine, plaintiff alleges that the "Masters and Johnson" name has achieved world-wide fame. Plaintiff further alleges that she is the sole trustee and beneficiary of the Revocable Trust Indenture of Virginia E. Johnson, the sole owner of the Masters and Johnson service mark ("service mark"), and that use of the service mark is licensed to certain clinics to inform patients and consumers of the clinic's

affiliation with the teachings, research, principles, and methodology of Dr. Masters and Ms. Johnson. Plaintiff alleges that the service mark was licensed to defendant, and that defendant used the service mark in a manner outside the scope of that license.

Four of plaintiff's claims against defendant remain pending. Count I brings a claim for unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq. Count IV brings a claim for service mark infringement pursuant to Missouri common law. Count V brings a claim for unfair competition pursuant to Missouri common law. Count VII brings a claim for breach of contract pursuant to Missouri common law.

Plaintiff has retained the services of Mark Hoffman, and intends to have Mr. Hoffman provide expert testimony at trial concerning the damages sustained by plaintiff as a result of defendant's allegedly improper use of plaintiff's service mark. In his expert report, Mr. Hoffman provides opinions with regard to: (1) the amount of defendant's gross revenue generated from the allegedly infringing programs during the period 1995 through April 2005; (2) the amount of defendant's profits generated from the allegedly infringing programs during the period 1995 through April 2005; (3) an estimated reasonable royalty adequate to compensate plaintiff for defendant's alleged infringement; and (4) the prejudgment interest on plaintiff's damages. See Doc. #60, Expert Report of Mark Hoffman, pp. 1-2.

Defendant has filed a motion to exclude improper damages testimony. Defendant's motion sets forth three reasons such

evidence should be excluded. First, defendant argues that, in light of plaintiff's failure to produce evidence of actual confusion, plaintiff is not allowed to recover damages under the Lanham Act. Second, defendant argues that, in the event plaintiff is allowed to recover some amount of damages, disgorgement of defendant's profit is an equitable remedy committed to the discretion of the Court, and evidence relating to profits as a measure of damages should not be presented to the jury. Finally, defendant argues that a "reasonable royalty" analysis is an improper method for determining damages in a Lanham Act case, and accordingly evidence that supports such an analysis should be excluded.

Plaintiff has filed a motion to exclude the expert testimony of Dr. Woods. Plaintiff does not challenge Dr. Woods' credentials or expertise; rather, plaintiff argues that Dr. Woods' opinions are speculative and unreliable. Defendant objects to plaintiff's motion, and argues that, given the length of the license and the applicable authority, Dr. Woods' methodology and opinions are relevant and reliable.

### III. Discussion

**Defendant's Motion in Limine**

The Lanham Act prohibits "the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source or sponsorship of the goods or services." Davis v. Walt Disney Co., 430 F.3d 901, 903 (8th Cir. 2005) (citing 15 U.S.C. § 1125). To recover damages under the

Lanham Act, a "plaintiff must prove both actual damages and a causal link between the defendant's violation and those damages." Blue Dane Simmental Corp. v. Am. Simmental Ass'n, 178 F.3d 1035, 1042 (8th Cir. 1999). The Court has broad discretion to award monetary relief "necessary to serve the interests of justice," so long as relief is not awarded as a penalty. Metric & Multistandard Components Corp. v. Metric's, Inc., 635 F.2d 710, 715 (8th Cir. 1980).

> Great latitude is given the trial judge in awarding damages, and his judgment will not be set aside unless the award is clearly inadequate. This is especially true of an award fashioned pursuant to the Lanham Act which expressly confers upon district judges wide discretion in determining a just amount of recovery for trademark infringement.

Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1564-65 (11th Cir. 1986) (quotations omitted).

A plaintiff's actual damages and a defendant's profits are considered separate avenues for relief under the Lanham Act, and a plaintiff's recovery may include both actual damages and disgorgement of defendant's profits. See 15 U.S.C. § 1117(a) (stating that, subject to principles of equity, injured party is entitled to recover (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action). "[T]he plaintiff's total recovery is subject to principles of equity," and, if a court finds that the recovery amount based on defendant's profits is "inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find

- 4 -

to be just, according to the circumstances of the case." Wildlife Research Ctr., Inc. v. Robinson Outdoors, Inc., 409 F. Supp. 2d 1131, 1135 (D. Minn. 2005) (citing 15 U.S.C. § 1117(a)).

Actual damages are typically used to measure the injury to the trademark holder in terms of lost profits on diverted sales and injury to goodwill. See, e.g., ALPO Petfoods, Inc. v. Ralston Purina Co., 997 F.2d 949, 954 (D.C. Cir. 1993) ("[A]ctual damages under section 35(a) can include: profits lost by the plaintiff on sales actually diverted to the false advertiser, profits lost by the plaintiff on sales made at prices reduced as a demonstrated result of the false advertising, the costs of any completed advertising that actually and reasonably responds to the defendant's offending ads, and quantifiable harm to the plaintiff's good will, to the extent that completed corrective advertising has not repaired that harm."). However, although used less frequently, another compensatory remedy is the award of a reasonable royalty. "These damages measure the revenues that the trademark holder lost because the infringer failed to obtain a license and pay a royalty." Dennis S. Corgill, Measuring the Gains of Trademark Infringement, 65 Fordham L.R. 1909, 1911-12 (1997). "Royalties normally received for the use of a mark are the proper measure of damages for misuse of those marks." Ramada Inns, 804 F.2d at 1565; see also Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1350 (7th Cir. 1994) (stating that the "district court ought to begin with the one measure of actual damages that, if ascertained with reasonable certainty, could be said to reflect the actual loss

of plaintiff - the cost of a reasonable royalty" (emphasis in original)).

Defendant first argues that, in light of plaintiff's failure to produce any evidence of actual confusion, plaintiff is not allowed to recover any damages under the Lanham Act. See, e.g., United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1183 (8th Cir. 1998) ("[U]nless...literally false, or a trier of fact has determined that [defendant] acted willfully with intent to deceive or in bad faith, a party seeking relief under...the Lanham Act bears the ultimate burden of proving actual deception by using reliable consumer or market research."). However, the Court has already ruled that, considering plaintiff's averments in this case, actual confusion is inherent, and the Court is not persuaded to amend that ruling. Id. at 1180.

Defendant next argues that, in the event plaintiff is allowed to recover some amount of damages, disgorgement of defendant's profit is an equitable remedy committed to the discretion of the Court, and evidence relating to profits as a measure of damages should not be presented to the jury. While the Court finds that any award representing disgorgement of defendant's profits is subject to review by this Court for inadequacy or excessiveness, the Court currently intends to leave the initial determination of defendant's profits to the jury. See Wildlife Research Ctr., 409 F. Supp. 2d at 1136 (leaving for the jury the

question of the amount of defendant's profits not attributable to actual damages already awarded).[1]

Finally, defendant argues that a "reasonable royalty" analysis is an improper method for determining damages in a Lanham Act action, and accordingly evidence that supports such an analysis should be excluded.  Essentially, defendant's argument goes to how actual damages should be measured.  As noted above, a plaintiff's recovery under the Lanham Act may include both actual damages and disgorgement of some or all of defendant's profits.  To wit, this Court has previously stated that while plaintiff may be entitled to monetary relief, plaintiff will be required to provide an evidentiary basis on which to rest any award of damages.  See Doc. #82, p. 18; Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1336 (8th Cir. 1997).  However, this Court has yet to rule how it

---

[1] This Court notes the jury instructions in Wildlife Research Ctr. read, in part, as follows:
> If you find that [defendant] engaged in false advertising, then [plaintiff] may be entitled to any of [defendant]'s profits attributable to the false advertising in addition to [plaintiff]'s actual damages. However, you may not include in any award of profits any amount that you included in determining actual damages.
> [Defendant]'s profits consist of the amount of money in sales that it made due to the false advertising, after deducting costs directly associated with those sales. [Plaintiff] has the burden of proving by a preponderance of the evidence the amount of [defendant]'s sales attributable to the false advertising. [Plaintiff] then has the burden of proving its costs associated with those sales.

DMN, Case No. 02-CV-2773-DSD, Doc. #199 p. 28.  Further, that court's verdict form left for the jury the question, "[w]hat amount of profits received by [defendant] was attributable to the Lanham Act...violation(s)?"  Id. at 43

intends to instruct the jury with regard to calculating plaintiff's actual damages.

Defendant argues that a reasonable royalty is not appropriate in this case. It states that no case from the United States Supreme Court, the Eighth Circuit, or the Eastern District of Missouri has ever allowed a plaintiff to recover a reasonable royalty in a trademark case. Further, it argues that even if the Court found that such a method could be used to measure plaintiff's damages, the Court should find that such a method would drastically overstate plaintiff's damages, as the existing licensing agreement did not allow plaintiff to license the service mark to anyone else.

Although there is little case law directly on point, the Court finds that, after consideration of the above stated authority, a reasonable royalty can be included as an element of plaintiff's actual damages. Indeed, similar to Sands, Taylor & Wood, in this case the most exact measure of plaintiff's actual damages, if ascertained with reasonable certainty, is the cost of a reasonable royalty.[2]

**Plaintiff's Daubert Motion**

Testimony by a qualified expert that bears on scientific, technical, or other specialized knowledge and will assist the trier

---

[2] Defendant further states that the method used by plaintiff's expert in determining a reasonable royalty (specifically, use of the Georgia-Pacific factors) is speculative and will improperly influence the jury. The Court has already stated that it will not exclude plaintiff's expert's opinions, and anticipates such opinions will be subjected to vigorous cross-examination and presentation of contrary evidence. Accordingly, the Court will overrule defendant's motion with regard to plaintiff's expert's method to calculate damages.

of fact to understand the evidence or to determine a fact in issue is admissible under Rule 702 if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. See Fed.R.Evid. 702. Pursuant to Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), Rule 702 imposes on trial courts a "gatekeeping" function to insure that proffered expert testimony is both relevant and reliable. See, e.g., Penney v. Praxair, Inc., 116 F.3d 330, 333 (8th Cir. 1997); Pestel v. Vermeer Mfg. Co., 64 F.3d 382, 384 (8th Cir. 1995). When assessing the relevance of proposed expert testimony, a trial court must determine whether the "reasoning or methodology in question is applied properly to the facts in issue." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 758 (8th Cir. 2006) (citing Daubert, 509 U.S. at 591-93). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, nonhelpful." Sorensen By and Through Dunbar v. Shaklee Corp., 31 F.3d 638, 648 (8th Cir. 1994) (citation omitted). When assessing the reliability of expert testimony, a trial court should consider several factors, including: (1) whether the concept has been tested; (2) whether the concept has been subject to peer review; (3) what the known rate of error is; and (4) whether the concept is generally accepted by the community. See Miller v. Baker Implement Co., 439 F.3d 407, 412 (8th Cir. 2006) (citing Daubert, 509 U.S. at 593-95).

> As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.

Bonner v. ISP Tech., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001). Accordingly, questions of conflicting evidence must be left for the jury's determination, and a trial court should resolve doubts regarding an expert's testimony "in favor of admissibility." Marmo, 457 F.3d at 758. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Kudabeck v. Kroger Co., 338 F.3d 856, 862 (8th Cir. 2003) (citing Daubert, 509 U.S. at 596).

In this case, Dr. Woods intends to offer, in part, opinions with regard to defendant's net profits associated with the use of the service mark.[3] To wit, Dr. Woods relies on statements made by Dr. Mark Schwartz, a therapist who was in charge of

---

[3] Plaintiff also states that Dr. Woods improperly deducted fixed costs from defendant's revenues when calculating defendant's profits. Defendant argues that the license spanned ten years, and some costs, although fixed in the short run, can become variable costs and accordingly are properly deduced from revenue to determine profit. The Court finds that, regardless of which party has the better of the argument, such an issue is one for the jury. See Adjusters Replace-A-Car, Inc. v. Agency Rent-A-Car, 735 F.2d 884, 891 n.6 (5th Cir. 1984) ("We recognize that a cost which is regarded as fixed in the short-run may become variable in the long-run, as, for example, when durable goods wear out and are either replaced or not. In most cases, however, we think it will be obvious to judges and juries which costs are appropriately viewed as fixed and which as variable over the relevant time period. When a legitimate dispute arises as to the characterization of certain costs, the question is one of fact to be resolved by the jury.").

- 10 -

defendant's programs and who opines that the use of the service mark increased attendance at defendant's programs by up to twenty percent. Plaintiff characterizes Dr. Schwartz's statements as "guesstimates," and that Dr. Woods' opinion fails to account for the economic realities of defendant's use of the service mark. Defendant opposes plaintiff's characterization, and states that Dr. Schwartz is uniquely positioned to testify about the programs. Defendant argues that, to the extent plaintiff seeks to challenge Dr. Woods' (and Dr. Schwartz's) assumptions, plaintiff should do so through rigorous cross-examination.

The Court notes that, unsurprisingly, the parties disagree with regard to the methodology that should be employed to calculate plaintiff's damages. The Court will allow the jury to hear both theories and determine which one is sounder. See EFCO Corp. v. Symons Corp., 219 F.3d 734, 739 (8th Cir. 2000). ("The district court further noted that [defendant's] proffered expert...disputed the methodology used by [plaintiff's expert]. Recognizing the parties' conflicting theories, the district court allowed both [experts] to testify regarding damages, leaving to the jury the ultimate decision as to which theory was the sounder....Although [defendant] questioned [plaintiff's expert's] approach, its criticisms were grist for the jury.").

In this case, the foundation upon which Dr. Woods' opinions rest implicate the weight of his opinions, not the admissibility. The Court assumes that the factual basis of Dr. Woods' opinions will be attacked by vigorous cross-examination,

- 11 -

presentation of contrary evidence, and careful jury instructions, and plaintiff's motion to exclude Dr. Woods' opinions will be denied.

For the above stated reasons,

**IT IS HEREBY ORDERED** that defendant's motion to exclude improper damages testimony [Doc. #107] is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion to exclude or limit the testimony of defendant's damages expert, James D. Woods [Doc. #95] is denied.

Dated this   20th   day of October, 2008.

>                               /s/Donald J. Stohr
>                               UNITED STATES DISTRICT JUDGE